## PROSECUTION FOR FALSE ANSWERS UNDER THE DEAN LAW.

Common Pleas Court of Stark County.

THE STATE OF OHIO V. BENTON J. BLOOMFIELD.

Decided, March, 1911.

*Liquor Laws—Review of Decisions of the Supreme Court Relating Thereto—Constitutionality of Amendment to the Dean Law Relating to Answers to Questions Propounded to Liquor Dealers by Assessors—Compliance with this Provision Does Not Constitute a License to Sell—Universal and Uniform Operation of Laws Distinguished.*

The provisions of Sections 6081, *et seq.*, General Code, requiring that each assessor make a return as to each place within his jurisdiction in which intoxicating liquors are sold, together with answers to certain prescribed questions covering the history and character of the person or firm carrying on said business, does not amount to a license to one complying therewith to carry on the traffic, nor does it discriminate between persons so engaged, or fail to apply equally or to afford equal protection of the law to all; but it is a regulative provision and is constitutional, and an indictment will lie for making under oath a false answer to one of the questions so propounded.

Judge Crane, for the demurrer.

A. J. Freiberg and H. C. Pontius, contra.

AMBLER, J.

A demurrer has been interposed in this case to an indictment charging the defendant with having sworn falsely in answer to the fourth question required to be answered under oath by the provisions of Section 5 of an act "To amend and supplement Section 5 of an act entitled 'an act providing against the evils resulting from the traffic in intoxicating liquors passed May 14th, 1886, as amended March 28, 1906, and to further provide against the evils resulting from the traffic in intoxicating liquors,'" known as the Dean law.

It is contended in support of this demurrer that to require a compliance with the provisions of the act in question, would be

to license the traffic, and thus come within the inhibition of the eighteenth section of the schedule of the Constitution, and that the provision also violates Section 1, Article I of the Constitution of Ohio, in that it discriminates between persons engaged in the sale of intoxicating liquors, and does not apply equally and afford all the equal protection of the law.

The determination of the questions here involved must be found from the decisions of our Supreme Court, if we are able to analyze and reconcile them, bearing in mind the principle of construction that every doubt must be resolved in favor of the constitutionality of the act, and that courts must be clear in their conclusions before they should declare such provisions unconstitutional.

An analysis of the acts attempting to tax the liquor traffic in this state, and the decisions of our Supreme Court as to their constitutionality, shows that:

The Pond law held unconstitutional in *State* v. *Hipp,* 38 O. S., 199, provided that one must give bond to pay the tax, and failing to do that, or continuing after bond forfeited, he is guilty of a misdemeanor, and that failing to comply with the act the traffic is denominated "illegal traffic."

The act of April 17, 1883 (the Scott law), held constitutional in *State* v. *Frame,* 39th O. S., 399, provided that the tax should be a lien upon the real estate in which such business is conducted, and that one engaged or continuing in the business without the written consent of his landlord, if a tenant, should be guilty of a misdemeanor; provides for a verified statement to the assessor and a penalty for refusing or failing to furnish information for such statement.

The Scott law as amended in 81st O. L., 204, was held unconstitutional in *State* v. *Sinks,* 42 O. S., 345, in so far as it provided for a lien on real estate occupied by a tenant who is a dealer in liquors, and reversed *State* v. *Frame, supra,* because it was improbable that the Legislature would have enacted the act without such a provision.

The Dow law, declared constitutional in *Adler* v. *Whitbeck,* 44 O. S., 539, after reiterating the power of the General Assembly to tax the business as a means of providing against the

evils resulting from the sale of intoxicating liquors, holds that such tax and the penalties imposed for refusal to sign and verify the statement to the assessor required does not make the law unconstitutional and a license law, although the act provides that such taxes and penalties shall attach as a lien on the property in which the business is conducted; and *Anderson* v. *Brewster*, 44 O. S., 576, also declaring the Dow law constitutional, directly, even if it does not so declare, reverses *State* v. *Sinks* when it holds that a valid lien may be created upon real estate when a tenant holds under lease, written or parol, made after the passage of the statute, and therefore affirms *State* v. *Frame*, 39 O. S., 399, in the respect that it was reversed in *State* v. *Sinks*.

There is much said in the opinions in these different cases that perhaps can not be reconciled with this analysis. But, looking to the syllabi alone in the several cases, which is the declared law, my conclusions follow.

My somewhat careful reading and study of these cases however leads me to the conclusion that our Supreme Court as it has changed in its personelle, has changed also in its views and distinctions on the questions of license and tax, and in its later enunciations has been inclined to hold the traffic legal and taxable as a business and to hold that no restriction whatever which the Legislature in its wisdom sees fit to put upon it should be regarded as a condition precedent to the right to conduct the business so as to render it a license, but regards such restrictions as simply regulatory.

This seems to me to be the effect of the decisions in *Adler* v. *Whitbeck* and *Anderson* v. *Brewster*, 44 O. S., 539 and 576.

The earlier cases defined a license as ''permission granted by some competent authority to do an act which without such authority would be illegal,'' and said, ''The object of a license is to convey a right which does not exist without a license,'' and ''a common right is not the creature of a license.''

Judge Minshall, in *Adler* v. *Whitbeck*, 44 O. S., page 559, acquiescing in this definition and these statements, says:

''That is permitted which can not be done without permission; and to say that a person is permitted, licensed, to do what he lawfully may do without permission is a misuse of words.

"Hence, unless it can be shown that the simple tax of the traffic enlarges the privileges of those engaged in it, or confers a right that did not previously exist, there is no ground for saying that a tax is a license of the business.  *  *  *  The distinction between a tax upon business and what might be termed a license is, that the former is exacted by reason of the fact that the business *is carried on,* and the latter is exacted as a condition precedent to *the right* to carry it on.  In the one case the individual may rightly engage in and carry on the business without paying tax; in the other he can not.  This seems to be the distinction upon which the case of *State* v. *Hipp* was decided. See opinion of Okey, C. J., 38 O. S., 226-229.  Also McIlvaine, J., in *State* v. *Frame,* 39 O. S., 412.''

This reference to Judge McIlvaine's opinion in the Frame case, and the compliment paid to Judge Johnson's dissenting opinion in the Hipp case, would seem to indicate that the court which declared the Dow law constitutional, would likely not have concurred in the opinion of the majority of the court which declared the Pond and Scott laws unconstitutional.

To the same effect, see "License Distinguished from a Tax," 1st Woolen & Thornton on the Law of Intoxicating Liquors, Section 222."

It is true that Mr. Black in his work on "Intoxicating Liquors," Section 108, says, "Any law which requires certain acts other than the mere payment of a tax to be done by a party as a pre-requisite to the right to enter upon the pursuit of the trade in question, and makes it a penal offense to engage in the business without such formality, is in reality a license tax no matter whether it is called a tax or by any other name." But it will be observed that this statement of the rule is taken from the earlier decisions of our Supreme Court, and that Woolen & Thornton above referred to, have made their distinctions conform to the later cases in Ohio.

The Pond and Scott laws heretofore held unconstitutional by our Supreme Court sought to provide security for the payment of the tax before a right to sell was granted, and thus changed what would otherwise have been a tax into a license fee.  Not so with the law in question.  It says when you have shown yourself or yourselves proper persons to sell intoxicating liquors you may so engage, and be taxed, and in order to elicit the information,

you must answer the questions in the affirmative which the Legislature has established as a standard, and refusing so to answer, or answering falsely, you can not engage in the traffic, even if you do pay the tax. Because of the necessity for regulation recognized by the Constitution, and because of the fact that in the judgment of the Legislature, persons who could not answer the five questions in the affirmative, were improper persons to be entrusted with the conduct of such a business, it excludes them from the privilege entirely. It prescribes qualifications.

By the amendment to the Dow law in question it does not increase the tax or broaden the rights and privileges of any one engaged, or who may hereafter engage in the traffic. It simply limits the traffic by excluding such as in its judgment seem objectionable.

The act declares it was enacted by the Legislature to "provide against the evils resulting from the sale of intoxicating liquors." The Constitution recognizes that evils do exist, and that the Legislature may regulate the traffic to prevent them.

These evils are not enumerated, so the Legislature must, in the exercise of its discretion, determine the evils and remedies; and so long as it acts reasonably, and without violating the provisions of the Constitution, its authority can not be questioned by the courts. *State* v. *Frame,* 39th O. S., 410.

The law of April 17, 1883, under consideration in the Frame case, provided that the engaging or continuing in the liquor business on premises without the consent of the owner should be a misdemeanor. If this is "a mere restriction upon the exercise of an admitted right," as Judge McIlvaine says on page 414, why are not the provisions complained of in the act under consideration also mere restrictions upon the exercise of an admitted right?

In the Frame case if the seller can not obtain the consent of his landlord he is doing an illegal business. In the case at bar, if he does not comply with the provision of the law he is doing an illegal business if he continues; and one is as much a condition precedent to the right to traffic as the other.

The Dean law grants no greater privileges or immunities, and imposes no greater burdens or penalties on the seller than the Dow law; and the question under discussion in all the authorities

cited is as to whether the so-called tax, coupled with the method prescribed for securing and collecting it, amounts to a license or a legalizing of the business. In the statute under consideration, no provision being made for securing and collecting the tax, it would seem that the former decisions of the Supreme Court seeking to distinguish between license and tax, do not apply here.

The provisions of this law (Dow law) relating to taxes and penalties, was in effect affirmed in *Adler* v. *Whitbeck, supra,* and the other provisions of Sections 5 and 5*a* (Dean law) complained of, do not tend to legalize or license the business of any one, but on the contrary restrict it. They seek to elicit information for the purpose of determining, and determine and prescribe the qualifications, or rather determine who shall, in the regulation of the traffic, be denied the right to engage in the business, and prescribe the punishment of those forbidden the right who notwithstanding engage in the business, or swear falsely in seeking to qualify.

Under the present act or amendment there is no exaction of tax as a condition precedent to carrying on the business, nor is there any security for the tax exacted in advance, as was in the Pond and Scott laws.

It is a tax pure and simple, in which only the ordinary means of collecting taxes are applicable, except in the feature of making a lien on the property in which the business is conducted, which has heretofore been declared constitutional in the Dow law.

The payment of the tax, or the securing of the payment, are not here made conditions precedent to the right to carry on the business; and on authority of *Adler* v. *Whitbeck* and *Anderson* v. *Brewster,* no license is granted.

Such a law does not discriminate between persons engaged in the sale of intoxicating liquors, but affords all equal protection and benefit of the law, and does not violate either Section 1, Article I, or Section 2, Article I, of the Constitution of Ohio.

Primarily, every one has the right to do anything that is lawful, and to engage in whatever legitimate business or employment he desires; but certain businesses and employments are at-

tended with peculiar dangers and objections, making it necessary for the state to regulate and even prohibit them. It may regulate such businesses either by licensing them, imposing restrictions upon the manner and place in which they may be conducted or by determining who are not fitted to conduct them. .

True, it may not license the liquor traffic because of the constitutional inhibition, but it may regulate and tax it. The business being legal, and the taxing feature being in force before the passage of the act in question, what new rights are granted to these traffickers by the provisions complained of? None. The business is not further legalized. All the provisions added to the old Dow law are restrictions, which the Legislature undoubtedly regarded as reasonable regulations of the traffic.

Judge Cooley, in his work on "Constitutional Limitations," 6th Ed., 742, says:

"The general rule undoubtedly is that every person is at liberty to pursue any lawful calling, and to do so in his own way, not encroaching upon the rights of others. * * * But, here, as elsewhere, it is proper to recognize distinctions that exist in the nature of things and under some circumstances to inhibit employments to some one class, while leaving them open to others."

Under the Dean law, the state imposes a tax upon all alike whom it permits to engage in the traffic, except that for the purpose of getting information for the regulation of the traffic it imposes additional tax on those who refuse to give information and verify it, and the provisions for obtaining information as to who should be permitted to traffic, and punishing such as refuse to answer and disclose their disqualifications, or swear falsely, would seem to be a reasonable provision in regulating against the evils, and not such a discrimination as is forbidden by the Constitution.

The Legislature does not grant the right to traffic by this act. All had the right and might legally sell. What the Legislature did in this enactment was to determine how and by whom the sale might be conducted, and taxes and penalties collected.

The privileges of no one are increased; the privileges to some will be denied. The denial of the right to some is not the in-

creasing of the rights of those not denied.   Their rights remain the same as before the enactment.

As was said in argument, the present enactment was evidently intended for a test of the moral character of the trafficker; to fix a standard and determine whether they observe the laws; the exercise of a police power, not to license the good, but to exclude the bad, and the fact that the law is not broad enough to effectually do so, by making such inquiry applicable to whose who engage in the traffic after the time the assessor calls, does not violate Section 2, Article I of the Constitution of Ohio.   It is not a discrimination between persons engaged in the sale.   The act applies to all engaged in the sale at the time of the inquiry. Besides an act is not required to be of universal operation in order to be of uniform operation.

The law, by denying a man his liberty as a punishment for the commission of a crime, does not discriminate in favor of the innocent, nor does the law in question, by its effort to exclude the objectionable from the traffic, license the good, or discriminate in their favor in such a way as to violate the provisions of our Constitution.   All can still enjoy liberty, and pursue happiness along legal and necessarily restricted lines.

But apart from these considerations, I am of the opinion that by force of a recent decision of our Supreme Court, in *Hayner* v. *State,* No. 12406, this court is concluded as to the questions here raised on this demurrer.   True, the questions here urged do not seem to have been fully argued in that case, but the constitutionality of this act in the respects here complained of, was urged in the brief of Messrs. McMahon & McMahon, and the court, through Spear, J., said:

"Further contention is made that the whole statute is unconstitutional, the first part of it as being a license law, and the fourth section as being a general law, not of uniform operation. It seems to us that it can not be necessary at this late day to enter into a discussion as to whether our liquor taxing laws are license laws.   The ground has been fully plowed and harrowed in many previous decisions.   And Section 4 does operate uniformly within the meaning given a requirement of the Constitution as to general laws, because the operation of a statute is the same in all part of the state where the same circumstances

and conditions exist.  An act is not required to be of universal operation in order to be of uniform operation.  To sustain this objection would be to overrule all the decisions of this court relating to local option.  We regard the policy of the state in that respect as established by those decisions, and are not disposed at this late day to disturb it.''

The questions raised by this demurrer therefore become for this court *stare decisis*.  Demurrer will be overruled.  Exceptions noted.